APPEAL NO. 23-35288

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

RACHEL G. DAMIANO; KATIE S. MEDART,

*Plaintiffs-Appellants,*

v.

GRANTS PASS SCHOOL DISTRICT NO. 7, an Oregon public body;
KIRK T. KOLB, Superintendent, Grants Pass School District 7, in his
official and personal capacity; THOMAS M. BLANCHARD,
Principal, North Middle School, Grants Pass School District 7, in his
official and personal capacity; SCOTT NELSON; CLIFF KUHLMAN;
GARY RICHARDSON; DEBBIE BROWNELL; CASSIE WILKINS;
BRIAN DELAGRANGE; CASEY DURBIN, in their official and
personal capacities,

Defendants-Appellees

---

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES

Beth F. Plass, OSB 122031
bplass@vickersplass.com
Karen M. Vickers, OSB 913810
kvickers@vickersplass.com
VICKERS PLASS LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035
(503) 726-5975
*Attorneys for Defendants-Appellees*

December 4, 2023

**Table of Contents**

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

ISSUES PRESENTED FOR REVIEW ...................................................2

STATEMENT OF THE CASE................................................................2

  I.   Nature of the Case, Course of Proceedings, and Disposition Below ..............2

  II.    Statement of Facts .............................................................4

    A.   The Employment Matter ..................................................4

    B.   Procedural Facts .............................................................7

SUMMARY OF ARGUMENT ...............................................................7

STANDARD OF REVIEW .....................................................................8

ARGUMENT ..........................................................................................8

  I.   The District Court correctly determined that defendants did not violate the First Amendment as a matter of law. ...................................................................9

  II.    The District Court properly granted summary judgment to defendants on the Equal Protection claim. ...................................................................15

    A.   The Equal Protection claim is duplicative of the First Amendment retaliation claim...................................................................16

    B.   Plaintiffs failed to argue below that their temporary terminations violated Equal Protection...................................................................16

    C.   The Equal Protection claim rises and falls with the First Amendment claim...................................................................17

  III.    The District Court correctly held that plaintiffs abandoned their First Amendment challenge to District policy. ...........................................................18

  IV.    The District Court correctly determined that the individual defendants were entitled to qualified immunity...............................................................19

    A. Qualified immunity is a valid and existing legal doctrine. ...........................20

B.      No clearly established law shows that defendants violated plaintiffs' rights...................................................................................20

V.      Defendants did not violate the Speech Clause of the Oregon Constitution....................................................................................25

A. Plaintiffs did not allege that the Staff Participation Policy violated Article I, Section 8 of the Oregon Constitution. ...............................................25

B. The District Court properly found that plaintiffs conceded their speech retaliation claim under the Oregon Constitution. ...............................................26

VI.     The District Court properly granted summary judgment on plaintiffs' claim of disparate treatment based on religion. ...............................................28

A.      The record contains no direct evidence of discrimination. ......................28

B.      The District did not treat similarly-situated employees outside of the protected class more favorably. ........................................................30

C.      The District had a legitimate, non-discriminatory reason for temporarily terminating plaintiffs' employment, and plaintiffs have not shown that the given reasons were pretextual. ..........................................................31

CONCLUSION .......................................................................................32

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011).........................................................21

*Baker v. Racansky,*
  887 F.2d 183 (9th Cir. 1989) ...........................................22

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,*
  149 F.3d 971 (9th Cir. 1998) ...........................................22

*Brosseau v. Haugen,*
  534 U.S. 194 (2004).........................................................22

*Chuang v. Univ. of Cal. Davis., Bd. of Trs.,*
  225 F.3d 1115 (9th Cir. 2000) .........................................29

*Cmty. House, Inc. v. City of Boise, Idaho,*
  623 F.3d 945 (9th Cir. 2010) ...........................................20

*Coghlan v. Am. Seafoods Co.,*
  413 F.3d 1090 (9th Cir. 2005) ................................... 28, 29

*Cordova v. State Farm Ins. Cos.,*
  124 F.3d 1145 (9th Cir. 1997) .........................................29

*Craig v. M & O Agencies, Inc.,*
  496 F.3d 1047 (9th Cir. 2007) .........................................28

*Craig v. Rich Twp. High Sch. Dist. 227,*
  736 F.3d 1110 (7th Cir. 2013) .........................................10

*Crawford v. Lungren,*
  96 F.3d 380 (9th Cir. 1996) .............................................25

*Dodge v. Evergreen Sch. Dist. #114,*
  56 F.4th 767 (9th Cir. 2022) ............................... 11, 14, 22

*Dominguez-Curry v. Nev. Transp. Dep't,*
  424 F.3d 1027 (9th Cir. 2005) .........................................29

*Eng v. Cooley*,
   442 F.3d 1062 (9th Cir. 2009) ...................................................9, 12

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ...............................................8

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) .................................................................9

*German v. Eudaly*,
   2018 WL 3212020 (D. Oregon June 29, 2018) ...................................27

*Hamby v. Hammond*,
   821 F.3d 1085 (9th Cir. 2016) ...............................................21

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ...............................................20

*Hawn v. Executive Jet Management, Inc.*,
   615 F.3d 1151 (9th Cir. 2010) ...............................................31

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993) ................................................................30

*Hittle v. City of Stockton*,
   76 F.4th 877 (9th Cir. 2023) .................................... 28, 29, 30

*Hyland v. Wonder*,
   972 F.2d 1129 (9th Cir. 1992) ...............................................10

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ..................................................17

*Jenkins v. Cnty. of Riverside*,
   398 F.3d 1093 (9th Cir. 2005) ...............................................18

*Juarez v. Gallagher*,
   809 Fed. Appx. 431 (June 17, 2020) ........................................20

*Mattos v. Agarano*,
   661 F.3d 433 (9th Cir. 2011) ..................................................21

*Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York,*
   336 F.3d 185 (2d Cir. 2003) ................................................................10

*Mullenix v. Luna,*
   577 U.S. 7 (2015) ..............................................................................21

*Munroe v. Cent. Bucks Sch. Dist.,*
   805 F.3d 454 (3d. Cir. 2015) ...........................................................10

*Navajo Nation v. U.S. Forest Serv.,*
   535 F.3d 1058 (9th Cir. 2008) ..........................................................25

*OSU Student Alliance v. Ray,*
   699 F.3d 1053 (9th Cir. 2003) ..........................................................17

*Parents for Privacy v. Dallas Sch. Dist. No. 2,*
   326 F. Supp.3d 1075 (D. Oregon 2018...............................................15

*Petersen v. Boeing Co.,*
   715 F.3d 276 (9th Cir. 2013) ...........................................................19

*Pickering v. Bd of Educ.,*
   391 U.S. 563 (1968).................................................................. passim

*Progressive Democrats for Social Justice v. Bonta,*
   73 F.4th 1122 (9th Cir. 2023) ...................................................... 13, 16

*Riley's American Heritage Farms v. Elsasser, et al.,*
   32 F.4th 707 (9th Cir. 2022) ........................................... 10, 11, 12, 13

*Scarbrough v. Morgan Cnty. Bd. of Educ.,*
   470 F.3d 250 (6th Cir. 2006) ...........................................................18

*Settlegood v. Portland Public Schs.,*
   371 F.3d 503 (9th Cir. 2004) ...................................................... 22, 24

*Shakur v. Schriro,*
   514 F.3d 878 (9th Cir. 2008) ...........................................................18

*Sorrels v. McKee,*
   290 F.3d 965 (9th Cir. 2002) ...........................................................21

*State v. Ausmus,*
   85 P.3d. 864 (Or. 2003) ........................................................26

*State v. Ciancanelli*,
   121 P.2d 613 (Or. 2005) ......................................................26

*State v. Henry*,
   732 P.2d 9 (Or. 1987) ..........................................................26

*State v. Rangel,*
   977 P.2d 379 (Or. 1999) ......................................................27

*Teamsters v. United States,*
   431 U.S. 324 (1977).............................................................30

*Tinker v. Des Moines Indep. Comm. Sch. Dist.,*
   393 U.S. 503 (1969)................................................. 22, 23, 24

*U.S. ex rel. Ali v. Daniel, Man, Johnson & Mendenhall,*
   355 F.3d 1140 (9th Cir. 2004) ............................................17

*Unt v. Aerospace Corp.,*
   765 F.2d 1440 (9th Cir. 1985) ............................................31

## INTRODUCTION

This case arises out of a public-school district's temporary termination of the employment of a middle school assistant principal and middle school teacher for multiple violations of district policy related to their on- and off-campus campaign to limit the civil rights of some of the school district's most vulnerable students. Plaintiffs-appellants Rachel Sager and Katie Medart brought this action against defendants-appellees Grants Pass School District 7 ("District"), Members of the Board of Education of Grants Pass School District 7 ("Board"), former District superintendent Kirk Kolb, former North Middle School principal Thomas Blanchard, former District Board members Scott Nelson and Brian DeLaGrange, and current Board member Debbie Brownell.

Plaintiffs alleged that defendants violated their speech rights under the First Amendment to the United States Constitution and the Oregon Constitution, rights to Equal Protection under the Fourteenth Amendment of the United States Constitution, and the prohibition on religious discrimination in Title VII. Defendants moved for summary judgment on the grounds that the temporary termination of their employment violated no laws, and in any event, the individual defendants were qualifiedly immune from suit. The District Court granted summary judgment to defendants on all claims. Defendants seek affirmance of the judgment in their favor.

1

## JURISDICTIONAL STATEMENT

Defendants accept plaintiffs' statement of jurisdiction.

## ISSUES PRESENTED FOR REVIEW

1.  Did the District Court correctly grant summary judgment for the defendants because they did not violate plaintiffs' First Amendment rights, and alternatively, are the individual defendants entitled to qualified immunity?

2.  Did the District Court correctly grant summary judgment for defendants because they did not violate plaintiffs' Fourteenth Amendment Equal Protection rights and alternatively, are the individual defendants entitled to qualified immunity?

3.  Did the District Court correctly grant summary judgment for defendants on plaintiffs' claim under the speech clause of the Oregon Constitution?

4.  Did the District Court correctly grant summary judgment for the defendants on plaintiffs' claim of disparate treatment on the basis of religion under Title VII?

## STATEMENT OF THE CASE

### I.    Nature of the Case, Course of Proceedings, and Disposition Below

Plaintiffs' claims subject to this appeal arise from the temporary termination of their employment for policy violations.  SER 3-86.[1]  Defendants filed an answer,

---

[1] The Second Amended Complaint was the operative complaint when defendants moved for summary judgment.  ER 507-529.  After the filing of the Second

asserting a qualified immunity defense. SER 104. Following the close of discovery, defendants moved for summary judgment against all of plaintiffs' claims. ER 302-329. Plaintiffs did not file a cross motion. *See generally* ER 507-529. The District Court granted defendants' motion for summary judgment in its entirety. ER 3-25.

Plaintiffs seek reversal of the District Court's order except: dismissal of the official capacity claims against the individual defendants (Opening Br. p. 64); the grant of legislative immunity to the individual board members for voting to enact certain policies (Opening Br. p.64-65 n. 2): and, dismissal of any claim to damages under the Oregon Constitution (Opening Br. p. 51 n. 1). And, notwithstanding their failure to seek summary judgment on any claims, plaintiffs seek an order directing the District Court to enter judgment in their favor. Opening Br. p. 25. Based on the fully developed record containing all material facts, summary judgment for defendants should be affirmed.

//

//

//

//

-------------------

Amended Complaint, plaintiffs voluntarily dismissed Board members Gary Richardson, Casey Durbin, Cassie Wilkins, and Cliff Kuhlman. SER 106-108.

## II.   Statement of Facts

### A. The Employment Matter

Plaintiff Rachel Sager was an assistant principal at North Middle School within the District.  SER 114.  Plaintiff Katie Medart worked as a science teacher at North Middle School.  *See* SER 201.

In February 2021, the District provided guidance for administrators regarding student pronouns, name changes, and bathroom access.  SER 116; 152-153; 266.  Sager and Medart disagreed with the guidance.  SER 118-119.  They began working on resolutions in opposition.  *See* SER 121; 204-205; 207.  They worked on these resolutions on school property, during work time, using District facilities, supplies, computers, and email accounts.  SER 124-136; 140-141; 154-192; 205-206; 208-210; 212; 220-257; 267-273; 275-276; 281-282.  Plaintiffs vacillate between describing their work on the resolutions as part of their jobs with the District and entirely personal, off-campus, expression.  *See, e.g.,* ER 171-173.

Sager and Medart ultimately filmed a video explaining their resolutions and posted it to YouTube and other social media platforms.  At one point in the video, Medart described concerns with a transgender male student in her class.  SER 122-123; 261.  The situation and the student were easily identifiable to individuals who watched the video.  *See* SER 94; 261.

Plaintiffs call the video and resolutions "I Resolve." SER 120. Initially Medart explained that I Resolve was not created to further religion but "to write fair policies for all students." SER 274. The video itself cites no Bible passage or scripture, nor do the video or resolutions identify Sager or Medart as speaking from a biblical or Christian viewpoint. Sager and Medart promoted I Resolve with social media and outreach to local and national media. SER 184; 398; 517.

Sager and Medart also aggressively promoted their video while on the job at North Middle School. SER 276. The District's Internet filters blocked plaintiffs' I Resolve website. Plaintiffs used their positions within the District to unblock it. SER 187-188. The District received complaints from plaintiffs' co-workers, students, and the community regarding plaintiffs' activities. Superintendent Kolb estimated that he received between 75 and 150 complaints, SER 282; the District's finance and operations officer fielded approximately 50, SER 299. The complaints were generally focused on three issues. First, plaintiffs' efforts to promote I Resolve while at work. SER 194-97. Second, Medart's reference in the video to a situation involving a transgender student in her class. ER 97. And third, concern that an administrator and teacher who were in positions of influence over transgender youth had put themselves at the forefront of advocating to reduce those students' rights. ER 101-102.

The District placed plaintiffs on paid administrative leave. SER 142-143; 193;211; 258. Initially, North Middle School Principal, defendant Blanchard, and HR Director Danny Huber-Kantola began the investigation. The District later hired Bill Landis, an outside investigator, because Medart filed a counter complaint (which she ultimately withdrew). SER 214; 284. Landis determined that plaintiffs violated several District policies. SER 306-376; 377-512.

Landis' reports were delivered to Sherry Ely, then-Chief Finance & Operations Officer for the District. Ely reviewed the reports and requested to meet with plaintiffs for an explanation. Both refused. Ely recommended that then-District Superintendent, defendant Kolb, terminate plaintiffs' employment. Kolb reviewed the recommendations. SER 296-297. He too requested to meet with plaintiffs, but they refused. SER 145; 215-216. Kolb recommended that the District Board terminate plaintiffs' employment. SER 194-199.

Plaintiffs had separate hearings before the Board regarding the recommendation for termination in July 2021. The Board voted 4-3 to terminate plaintiffs' employment. SER 149-150. Four months later, plaintiffs were reinstated to then-available positions in the District. *Id.* Superintendent Kolb left the District at the end of the 2021/2022 school-year.

//

//

6

## B. Procedural Facts

The District Court held oral argument on defendants' motion for summary judgment on November 30, 2022. ER 27. The District Court granted defendants' motion on March 29, 2023. ER 25. Judgment was entered in defendants' favor that same day. ER 2.

## SUMMARY OF ARGUMENT

Plaintiffs' Federal constitutional claims fail because defendants did not violate plaintiffs' Free Speech or Equal Protection rights. The District Court correctly ruled that the District's legitimate interest in preventing workplace disruption outweighed plaintiffs' right to unrestricted speech. Clearly established law provides that public employees' free speech rights are not absolute and they must be balanced with the rights of the public employer to engage in efficient public service. The record demonstrates that the District's actions were taken for the legitimate purpose of preventing disruption to its public schools. Alternatively, it was not clearly established that the individual defendants' actions violated plaintiffs' rights under the First Amendment or the Equal Protection clause. Therefore, judgment for the individual defendants on the First Amendment and Equal Protection claims should be affirmed on those alternative grounds.

Plaintiffs' claims for declaratory and injunctive relief under Article I, Section 8 of the Oregon Constitution were not appropriately pleaded or developed

before the District Court. Summary judgment was properly granted to defendants on that claim because it was waived, and in any event, Oregon law does not provide a mechanism for an employee to bring a speech retaliation claim which is analytically distinct from the analysis applicable to a speech retaliation claim under the federal Constitution.

Finally, the District Court correctly ruled that the District did not treat plaintiffs differently because of their religion in violation of Title VII. The record lacks direct evidence of religious animus, and plaintiffs failed to submit evidence that comparator employees received more favorable treatment. Plaintiffs' employment was temporarily terminated for the legitimate reason that they violated District policies, which included disruption to the school district. The judgment of the District Court should be affirmed.

## STANDARD OF REVIEW

Defendants agree that the review of the District Court's decision granting their motion for summary judgment is *de novo*. Opening Br., p. 25. This Court may affirm on any ground supported by the record. *Facebook, Inc. v. Power Ventures, Inc.,* 844 F.3d 1058, 1064 (9th Cir. 2016).

## ARGUMENT

The District Court correctly granted summary judgment against plaintiffs' claims. The temporary termination of plaintiffs' employment violated no laws.

I.     **The District Court correctly determined that defendants did not violate the First Amendment as a matter of law.**

Plaintiffs argued that defendants violated their First Amendment rights by temporarily terminating their employment from the District on account of their I Resolve video and related campaign. Plaintiffs conceded that their speech "caused a stir on GPSD campuses[,]" but argued that the disruption was not attributable to them. ER 262. The District Court correctly rejected these arguments, ultimately finding that "The District's legitimate administrative interests outweigh Plaintiffs' First Amendment rights." ER 17.

The First Amendment protects public employees' speech rights on matters of public concern when made as a private citizen, but that right is not absolute. *Pickering v. Bd of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731 (1968); *Eng v. Cooley,* 442 F.3d 1062, 1070-71 (9th Cir. 2009). The Court must "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568. This inquiry, known as the *Pickering* balancing test, asks: "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951 (2006).

The *Pickering* balancing test requires "a factual inquiry into such matters as whether the speech (i) impairs discipline or control by superiors, (ii) disrupts co-worker relations, (iii) erodes a close working relationship premised on personal loyalty and confidentiality, (iv) interferes with the speaker's performance of her or his duties, or (v) obstructs routine operation of the office." *Hyland v. Wonder,* 972 F.2d 1129, 1139 (9th Cir. 1992). In the K-12 employee context, considerations also include whether the educator's conduct has disrupted the school district's operations or eroded public trust in the form of parent and student complaints, collective student action related to the controversy, and whether the broader public and or media have taken an interest in the public-school employee's conduct. *See Riley's American Heritage Farms v. Elsasser, et al.*, 32 F.4th 707, 725-26 (9th Cir. 2022); *Munroe v. Cent. Bucks Sch. Dist.,* 805 F.3d 454, 473-74 (3d. Cir. 2015); *Craig v. Rich Twp. High Sch. Dist. 227,* 736 F.3d 1110, 1119-20 (7th Cir. 2013); *Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York,* 336 F.3d 185, 199 (2d Cir. 2003). Direct inappropriate interaction with students is not required. *Melzer,* 336 F.3d at 200.

Plaintiffs published their video, created additional social media to publicize it, courted media attention, and specifically directed the video to District campuses. SER 184; 517. Soon, the District received complaints from plaintiffs' co-workers, parents, current and former students and members of the community. The retired

law enforcement official hired to investigate the matter determined that plaintiffs violated multiple District policies, including a policy that prohibits employees from using social media in a manner that disrupts the school district's operations.

Students staged a walkout and protests which required the police to maintain order. SER 290-291. At least one person was arrested. *Id.* Teachers and counselors expressed serious concern about how plaintiffs would treat vulnerable students in their charge, both because Medart chose to describe a specific confidential encounter with a student in the social media campaign and because plaintiffs feigned ignorance of District policies in place regarding transgender students. ER 101. The issue ultimately generated significant media attention and concern for a subset of the District's most vulnerable students.

In arguing that the District Court erred in holding that the above facts gave rise to sufficient disruption, plaintiffs principally rely on two cases decided after plaintiffs' employment was temporarily terminated. *See, e.g.,* Opening Br. p. 29 citing *Riley's American* and *Dodge v. Evergreen Sch. Dist. #114,* 56 F.4th 767 (9th Cir. 2022). Both cases are distinguishable in material ways which favor defendants.

*Riley's American* involved a First Amendment retaliation claim brought by a field trip vendor. 32 F.4th at 716. In that case, a public-school stopped sending students on field trips to the vendor, Riley's Farm, after receiving two parent

11

complaints about controversial tweets authored by the principal owner of the farm – Riley – on his personal Twitter account. *Id.* at 716.

This Court rejected the school district's argument that its decision to discontinue the field trips was justified on disruption grounds as a matter of law. *Riley's American,* 32 F.4th at 727-28. Specifically, the Court noted that the tweets "did not mention or reference the School District or field trips to Riley's Farm in general." *Id.* at 726. Additionally, there were "no allegations" that Riley "made (or planned to make) any controversial statements during a school field trip; indeed, there are no allegations that he interacted at all with the students during the field trips." *Id.* Next, the court found that two complaints were "far afield from cases where the government gave weight to hundreds of parent and student complaints." *Id.* Finally, the Court noted that media attention to the tweets was relatively minimal. Given those considerations, this Court ruled that the public school district fell "short of justifying their adverse actions against the Riley plaintiffs as a matter of law at summary judgment." *Id.* at 727.[2]

_____

[2] The Court also rejected the *plaintiffs'* claims that they were entitled to summary judgment on their damages claims against the individual defendants. *Riley's American,* 32 F.4th at 728 ("On the other hand, these same considerations lead us to reject the Riley plaintiffs' argument that they are entitled to partial summary judgment on their claims against Elsasser and Nemer for damages.").

Below, defendants noted the five-step series of questions that applies to the First Amendment retaliation claim, ER 314-315 citing *Eng,* 552 F.3d at 1069.

Here, in contrast to *Riley's American,* plaintiffs' video specifically referenced their positions as school employees, they worked on the movement at school, attempted to recruit signatories at school, and used their positions within the school to unblock the video from the District's Internet filters. Plaintiffs' positions, unlike the principal owner of Riley's Farm, required them to interact with students daily. In contrast to the school's receipt of two complaints in *Riley's American*, here the District received at least 125 complaints, more than 20 of which were formalized. Plaintiffs' conduct garnered more media attention than the minimal attention given to Riley's tweets, much of which was generated by plaintiffs themselves. *See* SER 184; 382.

—————————————

Defendants only challenged plaintiffs' proof on question four ("whether the state had an adequate justification for treating the employee differently from other members of the general public[,]" *id.* at 1069). The remaining questions, as plaintiffs argued below, involve fact questions. ER 252-269.

Summary judgment should be affirmed for defendants on all claims. Regardless, *sua sponte* summary judgment for plaintiffs is not appropriate on the First Amendment retaliation claims (or any of plaintiffs' claims) because whether plaintiffs spoke as citizens, whether plaintiffs' speech and/or protected class was a substantial or motivating factor for the alleged adverse employment actions, and whether defendants would have taken the same adverse employment action absent the protected speech are questions that have not been resolved as a matter of law, ER 12-13, and fact questions remain, *see* ER 252-269. Further, if the Court determines that defendants are not entitled to summary judgment regarding disruption, as in *Riley's American,* remand for trial on that factor is appropriate. 32 F.4th at 728.

13

In *Dodge,* a public-school principal told a teacher that he could not bring his Make America Great Again ("MAGA") hat to "teacher-only" trainings on threat of disciplinary action. The principal justified the prohibition on the MAGA hat on the grounds that it was disruptive – teachers complained that it made *them* feel upset – and potentially disruptive – to the district's students who the teacher would later encounter. *Dodge,* 56 F.4th at 782-83. This Court rejected the argument, reasoning, first, that a small number of complaints by the teacher's co-workers who disapproved of the teacher's messaging was not the type of disruption sufficient to suppress the teacher's speech. *Id.* at 783. The Court reasoned, second, there was no issue related to disruption to students or school because the teacher had not worn the hat in the presence of his students. *Id.*

Here, the District's receipt of complaints was different in volume and content than those received in *Dodge*. The complaints did not come exclusively from adults personally disapproving of their co-workers' presidential choice exemplified by a hat sitting on a desk. Rather, the complaints came from individuals who were concerned about the message plaintiffs were promoting while being paid to educate students and that they were *publicly* sending to their own students.

Simply put, plaintiffs' speech disrupted the District. Moreover, it was reasonable for the District to predict that plaintiffs' speech – advocating that the

school district adopt policies which violate Oregon law and reduce the rights of transgender students (*Parents for Privacy v. Dallas Sch. Dist. No. 2,* 326 F. Supp.3d 1075, 1108 (D. Oregon 2018) ("A policy that segregates school facilities based on biological sex and prevents transgender students from accessing facilities that align with their gender identity violates Oregon law.")), would cause a substantial disruption to the school district.[3] The District Court correctly found that the District's legitimate interest in preventing disruption outweighed plaintiffs' speech rights.

## II. The District Court properly granted summary judgment to defendants on the Equal Protection claim.

The District Court granted summary judgment to defendants on the Equal Protection claim, holding that it was duplicative of the First Amendment retaliation claim and therefore not viable as a matter of law. ER 18-19. That ruling was correct. Regardless, plaintiffs waived their Equal Protection claim by failing to advance it below. And in any event, the Equal Protection claim rises and falls with the First Amendment retaliation claim. As described in section I. *supra,* the First

---

[3] Plaintiffs take umbrage the District Court's characterization of their speech as proposing to reduce the rights of transgender students. Plaintiffs were proposing policies that violated, at least, Oregon law regarding the use of school facilities. *Parents for Privacy,* 326 F. Supp 3d. at 1108.

Amendment claim fails because the District's interest in preventing disruption outweighed plaintiffs' speech interest.

### A. The Equal Protection claim is duplicative of the First Amendment retaliation claim.

The District Court properly dismissed the Equal Protection claim, finding that it was duplicative of the speech retaliation claim. ER 18-19. Citing multiple cases involving First Amendment retaliation claims brought by government employees, the District Court held that "[d]isparate treatment stemming from alleged retaliation for speech or conduct does not implicate the Equal Protection Clause of the Fourteenth Amendment." ER 18. In the public employment context, claims that a government employer restricts the speech of some of its employees but not others is governed only by the First Amendment. *See Progressive Democrats for Social Justice v. Bonta,* 73 F.4th 1118, 1122 (9th Cir. 2023) (so holding in the context of prohibitions on certain government employees soliciting political contributions).

### B. Plaintiffs failed to argue below that their temporary terminations violated Equal Protection.

Before the District Court, plaintiffs asserted that defendants violated their right to Equal Protection by restricting their access to a public forum when the District's Board passed the Amended Speech Policy. Plaintiffs did not argue below, as they assert in their Opening Brief, that the termination decisions violated

the Equal Protection Clause. *Compare* ER 273-274 *with* Opening Br. p. 60-61.

"Although no bright line rule exists to determine whether a matter [h]as been

properly raised below, an issue will generally be deemed waived on appeal if the

argument was not raised sufficiently for the trial court to rule on it." *In re Mercury*

*Interactive Corp. Sec. Litig.,* 618 F.3d 988, 992 (9th Cir. 2010) (citation omitted)

(cleaned up). Plaintiffs waived their Equal Protection claim arising out of the

temporary termination of their employment by failing to argue it below.

### C. The Equal Protection claim rises and falls with the First Amendment claim.

The record also supports defendants' entitlement to summary judgment

when that claim is analyzed consistent with the First Amendment retaliation claim;

therefore, this Court may affirm judgment in their favor on that basis. *U.S. ex rel.*

*Ali v. Daniel, Man, Johnson & Mendenhall,* 355 F.3d 1140, 1144 (9th Cir. 2004)

(this Court "may affirm a grant of summary judgment on *any* ground supported by

the record) (emphasis added)).

Plaintiffs' position is that their Equal Protection claim is co-extensive with

their First Amendment claim and Title VII religious discrimination claim. *See*

Opening Br. p. 61 (citing *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1067 (9th

Cir. 2003)). If the Court declines to dismiss that claim as duplicative, as plaintiffs

suggest it should be analyzed the same way as the First Amendment and Title VII

claims. Otherwise, as it relates to the First Amendment claim, *Pickering-Connick*'s guarantee that a public employer may regulate its employee's conduct to ensure the effective performance of its operations would be eviscerated. *See Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 262 (6th Cir. 2006) (upholding employee's Equal Protection claim based on exercise of free speech, but declining to use fundamental rights analysis, which would apply strict scrutiny). And for the reasons described in section II. a. *supra,* this Court should affirm dismissal of the Equal Protection claim.

### III. The District Court correctly held that plaintiffs abandoned their First Amendment challenge to District policy.

The District Court correctly held that plaintiffs abandoned their claims alleging First Amendment challenges to District policies. ER 18. "A plaintiff has 'abandoned…claims by not raising them in opposition to [the defendant's motion for summary judgment.'" *Shakur v. Schriro,* 514 F.3d 878, 892 (9th Cir. 2008) (quoting *Jenkins v. Cnty. of Riverside,* 398 F.3d 1093, 1095, n. 4 (9th Cir. 2005)). Here, defendants moved for summary judgment against all claims, including the prior restraint and compelled speech claims. Plaintiffs' opposition did not mention the prior restraint claim. Accordingly, as the District Court correctly found, plaintiffs abandoned the claim. ER 18.

Plaintiffs insist that their new argument should be considered because the general rule of waiver does not apply when the District Court addresses the merits of an issue not explicitly raised by the party. Opening Br. p. 43-44 citing *Petersen v. Boeing Co.,* 715 F.3d 276, 282 n. 5 (9th Cir. 2013). That rule, however, has been applied where a party fails to address an argument, not where, as here, a party abandons an entire claim. *See Petersen,* 715 F.3d at 282 n. 5 (addressing the merit of an argument).

Moreover, the District Court did not address the merits of the claims plaintiffs attempt to present to this Court. *Compare* ER 17-18 *with* Opening Br. p. 42-50. Instead, the District Court held that plaintiffs' policy-based challenges were not adequately pleaded and had been abandoned. And in a footnote, pointed out that employers are permitted to restrict the speech of public employees while they perform their jobs. ER 17. The District Court did not rule on the merits of plaintiffs' policy-based challenges. Plaintiffs waived their First Amendment challenges to District policies.

## IV. The District Court correctly determined that the individual defendants were entitled to qualified immunity.

In addition to ruling that defendants did not violate plaintiffs' First Amendment and Equal Protection rights, the District Court correctly determined, in the alternative, that the individual defendants were entitled to qualified

immunity on these claims. ER 20. The District Court's ruling should be affirmed. Qualified immunity is a valid legal doctrine. No clearly established law shows that defendants violated plaintiffs' rights.

### A. Qualified immunity is a valid and existing legal doctrine.

Plaintiffs argue that this Court should reconsider qualified immunity as a legal doctrine. *See* Opening Br. p. 41-42. Qualified immunity is a valid and existing legal doctrine. It applies unless and until the Supreme Court overrules it. *Juarez v. Gallagher,* 809 Fed. Appx. 431, 433 n. 2 (June 17, 2020) (citing *Hart v. Massanari,* 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it."). Nevertheless, even were it abolished, plaintiffs would still lose as their constitutional rights were not violated, as described above.

### B. No clearly established law shows that defendants violated plaintiffs' rights.

Qualified immunity protects state actors from personal liability in their individual capacities for official conduct so long as the conduct is objectively reasonable and does not violate clearly established rights. *Cmty. House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 964 (9th Cir. 2010). Qualified immunity shields state actors from liability even if their actions resulted from mistakes in law or fact unless the plaintiff can demonstrate that (1) the official violated a statutory

or constitutional right; and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd,* 563 U.S. 731, 765, 131 S.Ct. 2074 (2011); *Mattos v. Agarano,* 661 F.3d 433, 440 (9th Cir. 2011). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft,* 563 U.S. at 738.

A state actor's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what she is doing violates that right. *Id.* at 741. Clearly established law is not defined at a high level of generality. *Mullenix v. Luna,* 577 U.S. 7, 12 136 S. Ct. 305 (2015). Rather, the dispositive question is whether the violative nature of *particular* conduct is clearly established. *Id.* Inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Hamby v. Hammond,* 821 F.3d 1085, 1090 (9th Cir. 2016). In other words, existing precedent must have "placed beyond debate the unconstitutionality of the officials' actions, as those actions unfolded in the specific context of the case at hand." *Id.* at 1091. Plaintiff bears the burden of showing that the right at issue was clearly established. *Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir. 2002).

Because, under *Pickering*, the determination of whether an employee's expression is constitutionally protected requires a fact-specific, context-specific

balancing of competing interests, the law regarding public-employee free speech claims will "rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity[.]" *See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 979-80 (9th Cir. 1998); *Baker v. Racansky,* 887 F.2d 183, 187 (9th Cir. 1989) ("If the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent.").

Plaintiffs' claim of "clearly established" law relies on principles derived from *Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733 (1969), *Pickering,* and *Settlegood v. Portland Public Schs.,* 371 F.3d 503 (9th Cir. 2004) as articulated in *Dodge.*[4]  Opening Br. 39-40.  Each case arose out of starkly different facts, and each is distinguishable in material ways on multiple grounds.

In *Pickering,* a public-school teacher submitted a letter to the editor criticizing the school district's monetary allocations.  *Pickering,* 391 U.S. at 566. The statements contained in the letter were "in no way directed towards any person with whom [the teacher] would normally be in contact in the course of his daily

---

[4] *Dodge* not instructive on the "clearly established" question because it was issued after the events that give rise to this case.  *Dodge,* 56 F.4th 767; *Brosseau v. Haugen,* 534 U.S. 194, 200 n. 4, 125 S.Ct. 596 (2004) (noting that cases decided after the challenged conduct are "of no use in the clearly established inquiry.")

work as a teacher." *Id.* at 569-70. The Supreme Court noted that the relationship between a teacher, on the one hand, and board members and the superintendent, on the other, was not the type that required personal loyalty and confidence for the school district to properly function. *Id.* at 570. Thus, the Court rejected the school district's argument that the breakdown in the relationship between those parties gave the school district sufficient justification to discipline the teacher for his letter. *Id.*

Here, in contrast to *Pickering*, plaintiffs' speech did not address school budgetary allocations. The speech was directed toward governing the conduct of their own students, and in fact mentioned a former transgender student in Medart's class. Further, the breakdown or potential breakdown in relationships in this case did not involve an adults high-ranking positions squabbling over budgetary allegations, but instead included concerns about the relationships between an administrator and teacher and the vulnerable 11- to 14-year-old students who are compelled to be in their charge.

*Tinker* concerned a school district's discipline of students for wearing arm bands protesting the Vietnam war. 393 U.S. at 504. The students' silent, passive expression was "unaccompanied by *any* disorder or disturbance[.]" *Id.* at 508 (emphasis added). That is, there was no evidence of "interference, actual or nascent, with the schools' work or of collision with the rights of other students to

be secure and to be let alone." *Id.* Here, in contrast, plaintiffs did not engage in silent, passive expression. They started a social media campaign and aggressively promoted it, both on the Internet and while on the job. And unlike in *Tinker,* plaintiffs concede that their activities "caused a stir[.]" ER 262.

Finally, *Settlegood* involved a teacher's strictly internal complaints, advocating for her disabled students and criticizing her co-workers' and superiors' individual treatment of them. 371 F.3d at 514. This Court rejected the school district's argument that the co-workers' and superiors' upset at the teacher's personal criticism was a sufficient reason for the school district to restrict the teacher's speech. *Id.* at 514-15.

Unlike *Settlegood,* plaintiffs' speech here was not internal. Further, while the disruption to the District's workplace included (but was not limited to) conflict between colleagues, the discord did not arise exclusively because the complainants (or defendants) felt personally threatened by plaintiffs' criticisms of them. Rather, here, the complainants were concerned as to how plaintiffs' speech would impact their ability to work with a certain subset of 11- to 14-year-old students. There is a significant difference between the disruption caused by critical comments directed at management by the teacher in *Settlegood,* and disruption to a school district following a social media campaign directed at reducing the rights of an entire protected class of some of a public-school district's most vulnerable children.

No case clearly establishes that defendants violated clearly established law. It was reasonable for the defendants to conclude that they could terminate plaintiffs' employment in these circumstances. The District Court properly concluded that the individual defendants were entitled to qualified immunity.

## V.    Defendants did not violate the Speech Clause of the Oregon Constitution.

The District Court correctly determined that plaintiffs failed to establish a violation of Article I, Section 8 of the Oregon Constitution. ER 22. Plaintiffs never alleged or argued below that District policy GBG ("Staff Participation Policy") violated the Oregon Constitution and they abandoned their claim that their terminations violated Article I, Section 8.

### A. Plaintiffs did not allege that the Staff Participation Policy violated Article I, Section 8 of the Oregon Constitution.

The District Court appropriately declined to consider any claim that the Staff Participation Policy violated the Oregon Constitution. ER 22. Plaintiffs did not allege that the Staff Participation Policy violated the Oregon Constitution. SER 36-37. The District Court therefore correctly declined to consider it. *Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1080 (9th Cir. 2008); *Crawford v. Lungren,* 96 F.3d 380, 389 n.6 (9th Cir. 1996) (Declining to consider argument that statute violated First Amendment on a ground that was not argued below).

//

**B. The District Court properly found that plaintiffs conceded their speech retaliation claim under the Oregon Constitution.**

The District Court ruled that plaintiffs conceded their speech retaliation claim under the Oregon Constitution.  ER 22.  Before the District Court, plaintiffs failed to provide any law or analysis for a public employee speech retaliation claim under Article I, Section 8 of the Oregon Constitution.  ER 275-276.  Thus, the District Court properly considered that claim conceded.

Plaintiffs do not explain how this Court should analyze a speech retaliation claim by a public employee under Article I, Section 8 of the Oregon Constitution. The cases plaintiffs rely on, *State v. Henry*, 732 P.2d 9 (Or. 1987) and *State v. Ciancanelli*, 121 P.2d 613 (Or. 2005) analyze the constitutionality of criminal statutes involving content-based prohibitions on adult entertainment.

Article I, Section 8 of the Oregon Constitution provides, in part, that "[n]o law shall be passed restraining the free speech expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."  The protection of speech under the Oregon Constitution, however, "is not absolute" and Article I, Section 8 does not prohibit all time, place, and manner restrictions on speech.  *State v. Ausmus,* 85 P.3d. 864, 870 (Or. 2003).

26

There is no indication in those cases or elsewhere suggesting that the Oregon Constitution protects government employees from speech retaliation claims, or if it does, that the protections are more robust than those which apply under the Federal Constitution. *Cf. German v. Eudaly,* 2018 WL 3212020, *5 (D. Oregon June 29, 2018) (holding the same with respect to speech retaliation claim by a citizen). Article I, Section 8, like the First Amendment, does not prohibit restrictions that "focus on forbidden *effects* of expression, if they are not directed at the substance of the expression." *State v. Rangel,* 977 P.2d 379, 382 (Or. 1999) (emphasis original).

Plaintiffs' claim for a violation of Article I, Section 8 is a moving target, which the District Court properly found was conceded. In the event it was not conceded, the only claim pleaded was a claim alleging that plaintiffs' temporary termination of their employment was retaliatory. That claim, to the extent it exists, should be resolved the same way as plaintiffs' speech retaliation claim under the Federal Constitution.

//

//

//

//

27

**VI.    The District Court properly granted summary judgment on plaintiffs' claim of disparate treatment based on religion.**

The District Court properly dismissed plaintiffs' Title VII claim against the District[5] for disparate treatment on the basis of religion.  ER 22-25.  Plaintiffs failed to raise a fact question because they neither submitted direct evidence of discrimination nor showed that similarly situated individuals outside of their protected class received more favorable treatment.  The District also had a legitimate non-discriminatory reason for temporarily terminating plaintiffs' employment.

### A. The record contains no direct evidence of discrimination.

The record contains no direct evidence of discrimination.  "[D]irect evidence of discrimination is that which, 'if believed, proves the fact [of discriminatory animus] without inference or presumption.'"  *Hittle v. City of Stockton,* 76 F.4th 877, 888 (9th Cir. 2023) (citing *Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090, 1095 (9th Cir. 2005)).

Plaintiffs note that the Ninth Circuit has held that a "single discriminatory comment is sufficient to preclude summary judgment for the employer."  Opening

---

[5] Plaintiffs' answering opening refers to "defendants'" alleged discrimination in the Title VII claim.  *E.g.,* Opening Br. p. 52.  The District is the only proper defendant on the Title VII claim.  *Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1058 (9th Cir. 2007).

Br. at 53-54.  Plaintiffs then contend that questions posed to Medart during an interview following a complaint, the District's statement that I Resolve was not consistent with its values, and the Superintendent's testimony that he recommended plaintiffs' terminations for creating a substantial disruption meets this single comment standard.  *Id.*  None of that evidence comes close to that which the Ninth Circuit has found is direct (or indirect) evidence of discrimination.

The "single discriminatory comment" rule arises in cases where decisionmakers have made "*clearly* sexist, racist, or similarly discriminatory statements or actions" related to the protected characteristics of the employee.  *Coghlan,* 433 F.3d at 1095 (emphasis added).  The rule is derived from cases such as *Dominguez-Curry v. Nev. Transp. Dep't,* 424 F.3d 1027, 1039 (9th Cir. 2005) which involved statements that "women have no business in construction" and "should only be in subservient positions[;]" *Chuang v. Univ. of Cal. Davis., Bd. of Trs.,* 225 F.3d 1115, 1128 (9th Cir. 2000) which involved a remark that "'two Chinks' in the department were more than enough[;]" and *Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1147 (9th Cir. 1997) where the decisionmaker referred to a non-plaintiff employee as a "dumb Mexican."

Those cases are not remotely comparable to this one.  As in *Hittle,* the statements plaintiffs complain of "could only be described as reasonable inquiries based on allegations of misconduct that [the decisionmakers] had…received from

29

others in language comparable to what they had used." *Hittle,* 76 F.4th at 890.

Such comments do not "constitute[ ] evidence of direct discrimination specifically

or discrimination generally." *Id.* Moreover, Kolb's statement clarifying that Sager

and Medart's campaign was neither the District's speech nor consistent with its

values was based on his understanding that plaintiffs were advocating positions

that violated Oregon law. SER 289. "[Kolb] did not use derogatory terms to

express [his] own views, or focus on the religious aspect of [plaintiffs'] misconduct

to express [his] own animus, but rather referenced other legitimate constitutional

and business concerns[.]" *Hittle,* 76 F.4th at 889; SER 289. That "terminology

does not give rise to a genuine issue of discriminatory animus." *Id.*

### B. The District did not treat similarly-situated employees outside of the protected class more favorably.

The primary inquiry in a disparate treatment case is whether the employer

"'treat[ed] some people less favorably than others because of their race, color,

religion [or other protected characteristics.]'" *Hazen Paper Co. v. Biggins,* 507

U.S. 604, 609, 113 S. Ct. 1701 (1993) (quoting *Teamsters v. United States,* 431

U.S. 324, 225-36 n. 15 (1977)). Plaintiffs argued that they were treated less

favorably than other employees who also spoke out about school policies with

respect to transgender students. ER 267-268.

The District Court properly ruled that the comparators were not substantially similar in all material respects.  ER 24.  Where employees are disciplined for disruptive conduct or speech, the comparator employees must engage in similarly disruptive speech.  *See, e.g., Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1161 (9th Cir. 2010) (holding male employees terminated for sexual harassment not similarly situated to female employees who engaged in same conduct because employer did not receive complaints about the female employees).  Here, the posited comparators did not create similar disruptions.  The District Court properly found that plaintiffs failed to submit evidence of discriminatory animus.

### C. The District had a legitimate, non-discriminatory reason for temporarily terminating plaintiffs' employment, and plaintiffs have not shown that the given reasons were pretextual.

The District terminated plaintiffs' employment for multiple policy violations, including disruption to the workplace, a legitimate, non-discriminatory reason for taking an adverse employment action.  *Unt v. Aerospace Corp.,* 765 F.2d 1440, 1446 (9th Cir. 1985) (finding that termination for disruptive work environment can be a legitimate, nondiscriminatory basis). The District's reason was not a pretext for religious discrimination.

The District held an honest belief that plaintiffs violated multiple employment policies, including the policy related to disruption to the workplace.

31

Moreover, plaintiffs cannot point to any persons of other faiths who engaged in similarly disruptive conduct but were treated more favorably.  The District Court properly granted summary judgment on plaintiffs' Title VII discrimination claims.

## CONCLUSION

For all of the above-stated reasons, the summary judgment entered in defendants' favor should be affirmed.

DATED DECEMBER 4, 2023

VICKERS PLASS LLC

_____*s/Beth F. Plass*_____
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
            Of Attorneys for Defendants-Appellees

## STATEMENT OF RELATED CASES

There are no cases pending in this Circuit that satisfy the definition of "related case" under Ninth Circuit Rule 28-2.6.

DATED DECEMBER 4, 2023

VICKERS PLASS LLC

*s/Beth F. Plass*

**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
Of Attorneys for Defendants-Appellees

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 23-35288

I am the attorney or self-represented party.

**This brief contains** | 6,424 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

  ○ it is a joint brief submitted by separately represented parties;

  ○ a party or parties are filing a single brief in response to multiple briefs; or

  ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Beth F. Plass | **Date** | Dec 4, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                     *Rev. 12/01/2018*