APPEAL NO. 23-35288

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RACHEL G. DAMIANO; KATIE S. MEDART,

*Plaintiffs-Appellants*,

v.

GRANTS PASS SCHOOL DISTRICT NO. 7, an Oregon public body; KIRK T. KOLB, Superintendent, Grants Pass School District 7, in his official and personal capacity; THOMAS M. BLANCHARD, Principal, North Middle School, Grants Pass School District 7, in his official and personal capacity; SCOTT NELSON; DEBBIE BROWNELL; BRIAN DELAGRANGE, in their official and personal capacities,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Oregon
Case No. 1:21-cv-00859-CL / Hon. Mark D. Clarke

## APPELLANTS' REPLY BRIEF

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org

MATTHEW B. MCREYNOLDS
PACIFIC JUSTICE INSTITUTE
PO Box 276600
Sacramento, CA 95827
(916) 857-6900
mattmcreynolds@pji.org

TYSON C. LANGHOFER
MATHEW W. HOFFMANN
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................2

I.    Defendants retaliated against Rachel and Katie for their speech. ..................................................................................2

      A.    Rachel and Katie's speech did not cause any actual disruption. ......................................................................3

      B.    Defendants' retaliation violated clearly established law. ....................................................................................9

II.    The district court decided the merits of Rachel and Katie's First Amendment challenge to Defendants' policy, so that challenge is properly before this Court.........................................10

III.    Katie and Rachel have meritorious Oregon Constitution claims squarely presented to this Court.........................................12

IV.    Defendants discriminated against Rachel and Katie's religion.........................................................................................14

      A.    Direct evidence shows Defendants' discrimination..............14

      B.    Rachel and Katie satisfy *McDonnell Douglas*. .....................16

V.    Rachel and Katie's meritorious equal-protection claims are properly before this Court.............................................................20

VI.    Defendant District and Defendant Board Members have liability for their unconstitutional actions. ...................................22

CONCLUSION ...............................................................................22

CERTIFICATE OF SERVICE..............................................................24

i

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. School Board*,
　　57 F.4th 791 (11th Cir. 2022).......................................8, 9

*Ahanchian v. Xenon Pictures, Inc.*,
　　624 F.3d 1253 (9th Cir. 2010) ...........................................11

*Anderson v. General Dynamics Convair Aerospace Division*,
　　589 F.2d 397 (9th Cir. 1978) ...........................................17

*Ballou v. McElvain*,
　　29 F.4th 413 (9th Cir. 2022)......................................19, 21

*Burns v. Southern Pacific Transportation Company*,
　　589 F.2d 403 (9th Cir. 1978) ...........................................17

*Citizens United v. FEC*,
　　558 U.S. 310 (2010) ..............................................11, 12

*Clem v. Lomelli*,
　　566 F.3d 1177 (9th Cir. 2009) .........................................22

*Dariano v. Morgan Hill Unified School District*,
　　767 F.3d 764 (9th Cir. 2014) ...........................................20

*Dodge v. Evergreen School District #114*,
　　56 F.4th 767 (9th Cir. 2022).........................2, 3, 5, 9, 10

*Franks v. Bowman Transportation Company*,
　　424 U.S. 747 (1976) .....................................................17

*Groff v. DeJoy*,
　　143 S. Ct. 2279 (2023) .................................................17

*Hawn v. Executive Jet Management, Inc.*,
　　615 F.3d 1151 (9th Cir. 2010) ....................................17, 18

*Hittle v. City of Stockton*,
　　76 F.4th 877 (9th Cir. 2023)...........................................15

*Kennedy v. Bremerton School District,*
    142 S. Ct. 2407 (2022) .................................................................... 10

*Lindsey v. Shalmy,*
    29 F.3d 1382 (9th Cir. 1994) ......................................................... 22

*Mahanoy Area School District v. B.L. ex. rel Levy,*
    141 S. Ct. 2038 (2021) ...................................................................... 2

*Pickering v. Board of Education,*
    391 U.S. 563 (1968) ........................................................................... 2

*Progressive Democrats for Social Justice v. Bonta,*
    73 F.4th 1118 (9th Cir. 2023)........................................................ 21

*Riley's American Heritage Farms v. Elsasser,*
    32 F.4th 707 (9th Cir. 2022).......................................................7, 8

*State v. Henry,*
    732 P.2d 9 (Or. 1987).................................................................... 13

## **Statutes**

42 U.S.C. § 2000e-2(m)............................................................................ 19

# INTRODUCTION

A single librarian objected to what Rachel and Katie had to say about gender-identity education policy. She emailed colleagues to goad others to complain about Rachel and Katie's ideas. Only five (including her) did. Defendants then allowed that handful of hecklers to drown out speech on a topic of paramount public importance. Defendants concede that "the complaints came from individuals who were concerned about the message plaintiffs were promoting." Answering Br. 14. Yet Defendants placed Rachel and Katie on leave based on those complaints. Defendant Superintendent Kolb next condemned their speech, reassured the community that they weren't at work, and actively solicited further complaints. Defendants then investigated Rachel and Katie's speech, terminated them, and reported them to administrative bodies.

None of Defendants' arguments escape the weight of this evidence of retaliation. Rachel and Katie didn't waive any issues, both because they pressed them below and because the district court ruled on them. The evidence establishes that—in violation of decades of clearly established law—Defendants retaliated precisely because they disagreed with what Rachel and Katie had to say. Any purported disruption came from hecklers objecting to the content of Rachel and Katie's policy ideas. Defendants targeted Rachel and Katie's religious speech. And they employed an unconstitutional policy to do so.

Heckler's vetoes have no place in our public schools. *See* First Liberty Amicus Br. 4–9; Se. Legal Found. Amicus Br. 5–6. Those schools serve as "nurseries of democracy" that can only function "if we protect the 'marketplace of ideas.'" *Mahanoy Area Sch. Dist. v. B.L. ex. rel Levy*, 141 S. Ct. 2038, 2046 (2021). Courts must safeguard potentially "unpopular ideas" in that "free exchange" because dialogue "facilitates an informed public opinion" and enables self-governance. *Id.*; *accord* Thomas More Soc'y Amicus Br. 18–20; Def. Freedom Inst. Amicus Br. 21–23. Educators, most of all, must remain free to speak on education policy. They are "most likely to have informed and definite opinions" about such issues. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 572 (1968). To protect discussion on this important issue and vindicate speech and religious rights, this Court should reverse with instructions to enter summary judgment for Rachel and Katie.

## ARGUMENT

### I. Defendants retaliated against Rachel and Katie for their speech.

Defendants do not dispute that Rachel and Katie's speech "occupies the highest rung of the hierarchy of First Amendment values." *See* Opening Br. 29 (quoting *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 782 (9th Cir. 2022)). Defendants also do not dispute that they therefore must make a "stronger showing" of their interest in suppressing speech. *Id.* (quoting *Dodge*, 56 F.4th at 782). But they cannot meet their

burden. This Court should grant Rachel and Katie summary judgment on their First Amendment retaliation claim. Issues of material fact preclude summary judgment for Defendants, but the undisputed facts show Rachel and Katie are entitled to summary judgment in their favor. Opening Br. 26–38. *Contra* Answering Br. 12–13 n.2.

### A. Rachel and Katie's speech did not cause any actual disruption.

Under this Court's precedent, Defendants must show an "actual, material and substantial" disruption. *Dodge*, 56 F.4th at 782 (cleaned up); *see* FIRE Amicus Br. 10–11; Def. Freedom Inst. Amicus Br. 7–14. Consistent with the First Amendment's bar on viewpoint discrimination, Defendants cannot restrict "disfavored or unpopular speech in the name of preventing disruption, when the only disruption [is] the effect controversial speech has on those who disagree with it because they disagree with it." *Dodge*, 56 F.4th at 786. They cannot allow hecklers to drown out speech they don't like. Yet the evidence shows that is exactly what Defendants did.

Defendants concede that they retaliated against Rachel and Katie because of what they said: "the complaints came from individuals who were concerned about the message plaintiffs were promoting." Answering Br. 14. The record shows a single staff member encouraging others to complain about Rachel and Katie's speech, the five resulting complaints, and a handful more after Defendant Kolb "actively solicited" additional

hecklers. Opening Br. 12–15. Defendants point to "complaints from plaintiffs' co-workers, parents, current and former students and members of the community." Answering Br. 10. But Defendants do not—and cannot—dispute that:

- Superintendent Kolb and Principal Blanchard conceded that North Middle School and the District as a whole operated "effectively": schools functioned, teachers taught, and students learned. Opening Br. 30 (citing 2-ER-81–82, 151).

- *No* complaint came from a current North Middle School student or parent. Opening Br. 35–36.

- *All* complaints came after a single librarian saw Rachel and Katie's social media, sent it to other staff members, falsely labeled their views "anti-trans," and complained about those views at school. Opening Br. 12, 29 (citing 2-ER-214).

- All the remaining 10–20 complaints reflected in the record occurred *after* Kolb condemned Rachel and Katie's speech, he "actively solicited" complaints, and his solicitation was publicly posted on social media. Opening Br. 32 (citing 2-ER-90, 109–29, 200).

- The complaints objected to Rachel and Katie's proposed policy, labeling its common-sense ideas "disturbing," "despicable," and "disgusting." Opening Br. 16 (quoting 2-ER-113–24).

Neither do Defendants dispute that the protests occurred in response to Rachel and Katie's reinstatement—*not* the original publication of "I Resolve"—and thus could not provide a basis for their termination. *See* Opening Br. 32 (citing 2-ER-48, 186).

That evidence forecloses Defendants' attempts to distinguish *Dodge* and *Riley's*. This case has the same facts Defendants consider "material" to the disruption analysis in *Dodge*. *See* Answering Br. 11.

| Defendants' summary of *Dodge* | This case |
|---|---|
| "The principal justified the prohibition on the MAGA hat on the grounds that it was disruptive—teachers complained that it made *them* feel upset—and potentially disruptive—to the district's students who the teacher would later encounter." Answering Br. 14 (citing *Dodge*, 56 F.4th at 782–83). | According to Defendant Kolb, five of Rachel and Katie's colleagues were "offended by [their] position and efforts with the IResolve [sic] movement." Opening Br. 13 (quoting 2-ER-54).<br><br>"Teachers and counselors expressed serious concern about how plaintiffs would treat vulnerable students in their charge." Answering Br. 11. |
| "[A] small number of complaints by the teacher's co-workers who disapproved of the teacher's messaging was not the type of disruption sufficient to suppress the teacher's speech." Answering Br. 14. | Five colleagues "condemned 'the very existence of [the "I Resolve"] website and movement'" as a "bias incident." Opening Br. 14 (quoting 2-ER-96–100, 103–08). |
| "[T]here was no issue related to disruption to students or school because the teacher had not worn | Rachel and Katie filmed the "I Resolve" video while off duty during Spring Break, published the video on YouTube and their |

| | |
|---|---|
| the hat in the presence of his students." Answering Br. 14. | personal website, and didn't "identify themselves with" the District. 2-ER-173, 197, 214.<br><br>Rachel never discussed "I Resolve" with a student, and Katie discussed it with only one student after that student approached her. 1-SER-271; 2-SER-370; FER-9–11, 20.<br><br>The 10–20 complaints from community members occurred only *after* Defendant Kolb "actively solicited" them and his solicitation was publicly posted on social media. 2-ER-90, 109–29, 152, 200. |

Likewise for *Riley's*:

| Defendants' summary of *Riley's* | This case |
|---|---|
| The plaintiff posted "controversial tweets" to "his personal Twitter account." Answering Br. 12. | Rachel and Katie published "I Resolve" on their personal social media and website. 2-ER-173, 197, 214. |
| "[T]he tweets did not mention or reference the School District or field trips to Riley's Farm in general." Answering Br. 12 (cleaned up). | Rachel and Katie's "I Resolve" video "contains no mention of [their] last names or where [they] work[ed]." 2-ER-180.<br><br>They "never mention[ed]" the District or made "any other reference to speaking [as] representative[s] of District 7." 2-ER-180. *Contra* Answering Br. 13. |

6

|  | Katie gave a "hypothetical illustrative scenario" of a student and did not release any confidential information. 2-ER-184. *Contra* Answering Br. 4, 11. |
| --- | --- |
| "[T]here were no allegations that Riley made (or planned to make) any controversial statements during a school field trip; indeed, there [were] no allegations that he interacted at all with the students during the field trips." Answering Br. 12 (cleaned up). | None of Rachel and Katie's students complained about them.<br><br>Rachel and Katie undisputedly treat every student with dignity, love, and care. 3-ER-335.<br><br>In March 2021, the student members of North's LGBTQ club unanimously voted to allow Katie to attend their meeting (but Defendants Kolb and Blanchard prevented her from attending because of "I Resolve"). 2-ER-188–89.<br><br>Rachel and Katie had spotless personnel records. 2-ER-146.<br><br>Neither Kolb nor Blanchard had ever received a complaint from parents, co-workers, or students about Rachel or Katie. 2-ER-77–78, 144–45. |
| "[M]edia attention to the tweets was relatively minimal." Answering Br. 12; *see Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 727 (9th Cir. 2022) (A local newspaper wrote that "there was a 'social media outcry' against Riley's Farm, and reported that | Defendants cite only seven published media pieces—all from local media outlets. 1-SER-183; 2-SER-382, 398, 517.<br><br>All seven stories were published *after* Defendant Kolb solicited |

| | |
|---|---|
| Riley's tweets had been shared some 1,300 times. But there [was] no evidence in the record that Riley's tweets were covered by any other newspapers or media, and no indication that the tweets received nationwide attention.") | complaints against Rachel and Katie. 1-SER-183; 2-SER-382, 517. |
| The defendants "provided the substance of two complaints from parents" and asserted that "multiple parents asked the [school's] principal to either excuse their children from the field trips or choose an alternative venue." *Riley's*, 32 F.4th at 726–27; *see* Answering Br. 12. | *No* North Middle School parent or even a parent of any student in the District complained or asked that Rachel and Katie not supervise their children. 2-ER-109–24. |

Rachel and Katie created "I Resolve" to present "[r]easonable, loving, and tolerant solutions for education policies that respect everyone's rights." 3-ER-375. They want to protect children from potentially irreversible and life-changing decisions regarding gender identity. 3-ER-336; *see* Ethics Pub. Pol'y Ctr. Amicus Br. 11–16; Med. Pros. Amicus Br. 24–31. They also recognize important "privacy interest[s] … when children use communal restrooms" and locker rooms. *Adams ex rel. Kasper v. Sch. Bd.*, 57 F.4th 791, 804 (11th Cir. 2022) (en banc); *see* WoLF Amicus Br. 12.

They never advocated to "reduce the rights of transgender students." *Contra* Answering Br. 15; 1-ER-20. Notwithstanding a district court's flawed reasoning, *see* Answering Br. 15 & n.3, "a policy can lawfully classify" based on "biological sex without unlawfully

8

discriminating" based on "transgender status," *Adams*, 57 F.4th at 809. And, in all events, Rachel and Katie merely "advocat[ed]," *i.e.*, engaged in protected speech, for compassionate gender-identity education policy solutions. 1-ER-20. They certainly did not violate any laws.

Defendants let the hecklers drown out Rachel and Katie's speech. Their retaliation—based on a few staff members' speech-targeting— shows Defendants punished Rachel and Katie not because of any disruption but, as in *Dodge* and *Riley's*, because they disagreed with what Rachel and Katie said.

## B. Defendants' retaliation violated clearly established law.

The qualified immunity analysis examines whether "the contours of a right are sufficiently clear … even though the very action in question has not previously been held unlawful." *Dodge*, 56 F.4th at 784 (cleaned up). So officials don't receive qualified immunity "in novel factual circumstances" when the "case involves mere application of settled law to a new factual permutation." *Id.* (cleaned up). That rule controls here. The First Amendment protects public employees from retaliation "to quell what was, in reality, nothing more than the natural effect that disfavored political speech often has on those with different viewpoints." *Id.* Yet Defendants punished Rachel and Katie after some complained about their speech.

Defendants cannot escape binding precedent. They split hairs over the facts of *Pickering*, *Tinker*, and *Settlegoode*. Answering Br. 22–24. But it's immaterial that the speech in those cases involved budgetary matters or the Vietnam War or that students were the intended audience or colleagues were. *See also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2418 (2022) (coach's protected religious speech occurred in front of audience of students and the general public). What matters—as this Court has held—is that those cases ("along with several other[s]") establish the *contours* of the right Defendants violated here: "disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint at a public school." *Dodge*, 56 F.4th at 786 & n.6; *see also* FIRE Amicus Br. 13–16. Nor does it matter that this Court decided *Dodge* after the retaliation here because *Pickering*, *Tinker*, and *Settlegoode* long predated this case. *See Dodge*, 56 F.4th at 786. Those cases all preclude qualified immunity for Defendants.

## II. The district court decided the merits of Rachel and Katie's First Amendment challenge to Defendants' policy, so that challenge is properly before this Court.

Defendants make no effort to defend their speech-suppressing policy on the merits. Instead, they argue that Rachel and Katie abandoned those claims. Answering Br. 18. That argument fails twice. First, Rachel and Katie pressed their claims against the policy before the

district court. *See* 2-ER-28–29 (discussing prior restraint claim); 2-ER-276 (summary judgment briefing citing paragraphs of Complaint discussing First Amendment challenges to Defendants' policies).

Second, the district court ruled on the merits of the challenge by adopting Defendants' analysis. *Contra* Answering Br. 19. As Defendants concede, the district court "pointed out that employers are permitted to restrict the speech of public employees while they perform their jobs." *Id.* (citing 1-ER-17). The district court discussed the purported "legitimate interest[s]" Defendants had to restrict their employees' speech. 1-ER-17 n.2. In so ruling, it adopted the language and case citations offered by Defendants in their summary judgment briefing. *Compare* 1-ER-17 n.2, *with* 3-ER-319–20. Defendants cannot now argue that the district court didn't pass on the issue at all or fault it for undeveloped reasoning. *See Citizens United v. FEC*, 558 U.S. 310, 330 (2010) (holding district court passed upon an issue, preserving it for appellate review, even when it "did not provide much analysis").

Defendants also cannot escape the district court's merits decision by drawing an illusory distinction between the lower court resolving "arguments" and "claims." *See* Answering Br. 19. Waiver doesn't apply "where the district court nevertheless addressed the merits of the *issue*." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 n.8 (9th Cir. 2010) (citing *Citizens United*, 558 U.S. 310) (emphasis added). To take an extreme example, the *Citizens United* plaintiff voluntarily "stipulated to

11

dismissing" the relevant count. 558 U.S. at 329. Yet the Supreme Court still ruled on the merits of the dismissed count because the district court "passed upon" it. *Id.* at 330. Even in those "circumstances," the Court held it "necessary to consider" the plaintiff's challenge. *Id.* So too here. And Rachel and Katie's challenge shows (undisputed by Defendants before this Court) that Defendants' overbroad, content-discriminatory prior restraint cannot meet the exacting scrutiny required of public employee speech restrictions. *See* Opening Br. 42–50.

## III. Katie and Rachel have meritorious Oregon Constitution claims squarely presented to this Court.

Rachel and Katie have not waived or conceded any of their Oregon Constitution claims. Opposing Defendants' summary judgment motion, Rachel and Katie challenged Defendants' "punish[ment of] Plaintiffs for expressing their views on gender and sexuality" and "the constitutionality—both facially and as applied—of [Defendants'] original speech policy … and the District's amended speech policy." 2-ER-275–76. Rachel and Katie also alleged that Defendants' policy violated the Oregon Constitution. *See* 3-ER-363 (expressly incorporating paragraphs challenging the constitutionality of Defendants' policy into the Oregon Constitution claim). *Contra* Answering Br. 25. And again, the district court passed on the merits of the Oregon Constitution retaliation claim. In the district court's words, "[t]his claim fail[ed] as a matter of law." 1-ER-22.

As with Rachel and Katie's First Amendment claims against Defendants' policy, Defendants do not argue their policy satisfies the Oregon Constitution. For good reason. Defendants do not dispute that the Oregon Constitution provides more protection for speech than the First Amendment. Opening Br. 50. Nor do they dispute that the Oregon Constitution prohibits overbroad, content-discriminatory prior restraints imposed on public employee speech. *Id.* at 52. For these reasons, Defendants' policy violates the Oregon Constitution. *Id.* at 52–53.

Defendants try to fault Rachel and Katie for not providing a framework to analyze a public-employee retaliation claim under the Oregon Constitution. Answering Br. 26. Yet they concede that the Oregon Constitution doesn't allow regulation of "the substance of the expression." Answering Br. 27. And they don't dispute that the government cannot mandate a "uniform vision on how human sexuality should be regarded or portrayed." Opening Br. 51 (quoting *State v. Henry*, 732 P.2d 9, 18 (Or. 1987)). Those premises lead to a straightforward conclusion: by retaliating against Rachel and Katie for their off-duty speech regarding gender-identity education policy, Defendants did what the Oregon Constitution prohibits. They attempted to impose a uniform vision on how their employees should regard human sexuality. *Id.* at 52.

13

## IV. Defendants discriminated against Rachel and Katie's religion.

### A. Direct evidence shows Defendants' discrimination.

The record has more than sufficient direct evidence of discrimination to withstand summary judgment; it entitles Rachel and Katie to summary judgment. Defendants concede that a "single discriminatory comment" provides sufficient evidence of discrimination. Answering Br. 29. But they quibble that their statements to Rachel and Katie did not "*clearly*" show "discriminat[ion]" based on religion. *Id.* The record proves otherwise. Defendants Blanchard, Kolb, DeLaGrange, and Nelson all expressed their belief that Rachel and Katie's religious views prevented them from teaching in public schools:

- Before placing Katie on leave, Defendant Blanchard told her: "[I]t gives me a little bit of concern when you say that my faith does not affect my ability to do the job. That it may." 2-ER-134.

- Defendant Kolb wrote to all District staff that Rachel and Katie's religious views came into "direct conflict with the values of Grants Pass School District 7." 2-ER-220. He informed the community that Rachel and Katie were "not at work" while Defendants "investigat[ed]" their "social media postings discussing LGBTQ policies." 2-ER-227.

- Defendant Kolb testified that he recommended terminating Rachel and Katie because of their "discriminatory actions" in publishing "I Resolve." 2-ER-158–59.

- Defendant DeLaGrange justified terminating Rachel by opining: "It's hard for me to see how allowing this administrator to stay will not make some group of [the District's] students feel less safe in our schools, whether that is real, or their feeling." 2-ER-201–02.

- Defendant Nelson based his termination decision on concerns that Rachel and Katie could not "support" students who identify as transgender. 2-ER-201–02, 209–10.

Unlike in Defendants' cited case, *Hittle*, this evidence reflects the District's "own views" and "focus[es] on the religious aspect of [Rachel and Katie's alleged] misconduct to express [Defendants'] own animus." *Hittle v. City of Stockton*, 76 F.4th 877, 889 (9th Cir. 2023). In *Hittle*, the employer said the plaintiff belonged to a "Christian coalition" and "church clique." *Id.* at 888. This Court held that those statements did "not constitute discriminatory animus" because they did not originate with the employer and merely "show[ed] concerns about other persons' perceptions." *Id.* The statements did not reflect the employer's "own views" or its "own animus." *Id.* at 889.

Here, Defendants made clear they expressed their own views and animus. Blanchard used the first person to voice his concerns and then

placed Katie and Rachel on leave. Kolb said Rachel and Katie's views conflicted with those of their employer. Kolb's (incorrect) assertion that "I Resolve" contravened Oregon law does not exempt him from liability. *Contra* Answering Br. 30. He expressed the District's official view that Rachel and Katie's *beliefs alone* were discriminatory. DeLaGrange also used the first person to justify his termination vote by reference to Rachel and Katie's religious beliefs. And Nelson voted for their termination because he thought Rachel and Katie's religious beliefs precluded them from supporting all their students. Unlike in *Hittle*, Defendants did not merely parrot others' concerns; they expressed their own views as the discriminatory reasons why they took adverse action against Rachel and Katie.

### B.    Rachel and Katie satisfy *McDonnell Douglas*.

Defendants argue that no indirect evidence of discrimination exists because they retaliated against Rachel and Katie for the purported disruption caused by their religious views. Answering Br. 30–32. That's the problem. Defendants' claimed "disruption" occurred *because of* the content of Rachel and Katie's views. The hecklers complained "about the message plaintiffs were promoting." Answering Br. 14; *see* Opening Br. 31–33.

Title VII does not allow a heckler's veto to justify religious discrimination. To deny relief "merely because the majority group of employees, who have not suffered discrimination, will be unhappy about

16

it" would preclude "correcting the wrongs to which the Act is directed." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 775 (1976); *see also Groff v. DeJoy*, 143 S. Ct. 2279, 2296 (2023); *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 402 (9th Cir. 1978) ("general sentiment against" religion cannot justify denying Title VII relief); *Burns v. S. Pac. Transp. Co.*, 589 F.2d 403, 407 (9th Cir. 1978) ("fellow-worker's grumbling or unhappiness with a particular accommodation to a religious belief" cannot justifying denying relief).

Defendants' cited case, *Hawn*, is therefore inapposite. In *Hawn*, this Court rejected a Title VII sexual discrimination claim brought by male pilots terminated after their employer received a complaint that they sexually harassed a female colleague. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1160 (9th Cir. 2010). The male pilots argued that the employer did not terminate female flight attendants who had also allegedly engaged in sexual harassment. *Id.* But this Court held the comparators distinguishable because the pilots' "conduct gave rise to a complaint of sexual harassment, while the female flight attendants' alleged conduct did not." *Id.*

*Hawn* doesn't apply because in this religious discrimination case the complaints against Rachel and Katie show that the District in fact fired them for their religious views. In *Hawn*, the complaints concerned sexual harassment, not the plaintiffs' protected class. But here the complaints targeted Rachel and Katie's membership in the protected

class. They attacked Rachel and Katie's religious belief "in the immutability of sex and referring to students in accord with sex." Opening Br. 56. So Defendants' proposition that "comparator employees must engage in similarly disruptive speech," Answering Br. 31, has no support either in *Hawn* or logic. The *Hawn* court itself recognized that "a complaint may not always be material or determinative in light of the facts in a given case." 615 F.3d at 1161. When complaints and purported disruption target the protected class itself, they evince religious discrimination.

Lastly, the record shows Defendants' policy violation rationale is pretextual. Blanchard, Kolb, DeLaGrange, and Nelson all targeted Rachel and Katie's religious views. *Supra* Section IV.A. Defendants devote the vast majority of their briefing—both before this Court and the district court—to the alleged disruption from the complaints. *See* Answering Br. 9–15; 3-ER-318. The Oregon Employment Department found that the District "fired" Rachel and Katie "but not for misconduct connected with work." 2-ER-60; *see also* 2-ER-231. District policy allowed for de minimis personal use of District resources. 2-ER-181–82, 204. And District policy "encourage[s]" staff to recommend policies. Opening Br. 10 (quoting 2-ER-141). Rachel and Katie did not "aggressively" promote "I Resolve" at work: Defendants' single record citation shows Katie talked to only three colleagues during flex time, when teachers were free to perform a variety of tasks. *See* Answering Br. 5 (citing 1-SER-275); 2-ER-

18

181; *see also* 1-SER-132 (Rachel didn't talk to any teachers besides Katie at work about "I Resolve."). Katie didn't release any confidential information. 2-ER-184. Any staff member can request that the District unblock a new internet domain, which is what Rachel did. 1-SER-134–35. And Defendants rightly do not press their investigator's flawed conclusion that "I Resolve" met the very specific statutory definition of "political campaigning." *See* 2-ER-179–80.

At the very least, Defendants' policy violation argument creates a disputed issue of material fact. As the district court recognized, it "certainly appear[ed] to be the case" that Defendants terminated Rachel and Katie because they "opposed the content of Plaintiffs' speech." 1-ER-13, 16 n.1. But the evidence further proves, in line with the statutory requirement, that religion "was a motivating factor … even" if "other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Thus, Katie and Rachel satisfy *McDonnell Douglas*. The evidence also shows, independent of any comparators, that the District discriminated against their religion. That establishes a Title VII claim. *See Ballou v. McElvain*, 29 F.4th 413, 424–25 (9th Cir. 2022) ("[A] relevant comparator is not an *element* of a disparate treatment claim," rather "courts determine whether a government action was motivated by discriminatory purpose by engaging in the sensitive inquiry into such circumstantial and direct evidence of intent as may be available." (cleaned up)).

## V.   Rachel and Katie's meritorious equal-protection claims are properly before this Court.

Defendants' waiver argument fails again. As Defendants admit, the district court ruled on claims asserting "[d]isparate treatment stemming from alleged retaliation," Answering Br. 16 (quoting 1-ER-18), including "disciplinary action" based on speech, 1-ER-18. And—contrary to what the district court ruled—Rachel and Katie pressed an equal-protection religious discrimination claim. *See* 2-ER-274–75 (discussing Rachel and Katie's religiously motivated speech and membership in a protected class); 3-ER-365 (alleging that Defendants treated secular viewpoints better than religious ones). Rachel and Katie's equal-protection claims stemming from their termination are properly before this Court.

Defendants' duplicative argument similarly falls short. Defendants cannot—and don't event attempt to—circumvent binding authority holding that purportedly duplicative claims are not subject to dismissal for that reason. This Court has made it clear: "Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause." Opening Br. 60 (quoting *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 779 (9th Cir. 2014)). This Court, in the case cited by Defendants, did not affirm the dismissal of a public employee speech equal-protection claim based on duplicity, but instead analyzed it (and found it meritorious) "under the First Amendment." *Progressive Democrats for Soc. Just. v.*

*Bonta*, 73 F.4th 1118, 1122 (9th Cir. 2023). As Rachel and Katie discussed in their Opening Brief, the First Amendment analysis applies to their equal-protection speech discrimination claim. Opening Br. 60–61. And that claim is meritorious. *Supra* Section I.A; Opening Br. 26–38.

Not only does alleged duplicity not provide a basis for dismissal, Rachel and Katie brought an equal-protection religious discrimination claim. Contrary to Defendants' argument, the Title VII analysis does not control the equal-protection analysis. *See Ballou*, 29 F.4th at 422 ("The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose."). But evidence supporting a Title VII claim can also establish an equal-protection claim. *See id.* Here, both direct and circumstantial evidence of discriminatory purpose abound. *Supra* Part IV; Opening Br. 53–59.

Defendants make no argument as to why qualified immunity should shield them for their equal-protection violations. Instead, they rely solely on their hair-splitting analysis of First Amendment cases. Answering Br. 20–25. But those cases establish that Defendants cannot receive qualified immunity on either Rachel and Katie's First Amendment retaliation claim or their equal-protection speech claim. *Supra* Section I.B. And Defendants don't dispute that "[w]ell prior to 2021 the protection afforded under the Equal Protection Clause was held to proscribe any purposeful discrimination by state actors, be it in the workplace or elsewhere, directed at an individual solely because of the

individual's membership in a protected class." Opening Br. 62 (quoting *Lindsey v. Shalmy*, 29 F.3d 1382, 1386 (9th Cir. 1994)) (cleaned up). Rachel and Katie are entitled to summary judgment on their equal-protection claims.

## VI. Defendant District and Defendant Board Members have liability for their unconstitutional actions.

Defendants do not argue against *Monell* liability or liability for the individual board members for their termination decision. They therefore have waived that argument. *Clem v. Lomelli*, 566 F.3d 1177, 1182 (9th Cir. 2009) ("[W]here appellees fail to raise an argument in their answering brief, they have waived it." (cleaned up)). Defendant District has an unconstitutional policy, and its final policymakers unconstitutionally retaliated against Rachel and Katie. Opening Br. 63. The individual board members acted unconstitutionally by voting to terminate Rachel and Katie. *Id.* at 63–64. They cannot escape liability for their unconstitutional policy and actions.

## CONCLUSION

In our constitutional system, the government cannot allow subjective offense to set the boundaries of public discussion. It cannot allow hecklers to monopolize the marketplace. Otherwise, we, the People, will not have a say in determining how our country advances.

The evidence here shows that Defendants didn't like Rachel and Katie's policy proposals, so they suspended, investigated, and terminated

them. That violates fundamental free speech and religion guarantees. To uphold Rachel and Katie's rights—and the ability of all public employees to speak about what they know best—this Court should reverse with instructions to grant summary judgment for Rachel and Katie on all claims or reverse for trial on all claims.

Respectfully submitted,

Dated: December 21, 2023

By: */s/ Mathew W. Hoffmann*

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

MATTHEW B. MCREYNOLDS
PACIFIC JUSTICE INSTITUTE
PO Box 276600
Sacramento, CA 95827
(916) 857-6900
mattmcreynolds@pji.org

TYSON C. LANGHOFER
MATHEW W. HOFFMANN
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2023, I electronically filed the foregoing Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Mathew W. Hoffmann*
Mathew W. Hoffmann
Attorney for Plaintiffs-Appellants

December 21, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35288

I am the attorney or self-represented party.

**This brief contains** | 4,863 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated | |.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Mathew W. Hoffmann | **Date** | December 21, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**           *Rev. 12/01/22*